## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DOUG HUBBARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-3300 |
| | ) | |
| ILLINOIS BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Before the Court are Plaintiff's Motion for Partial Summary Judgement (d/e 18), Defendant's Motion for Summary Judgment (d/e 16) and the parties' responses thereto (d/e 29, 30, 32). Plaintiff's Motion (d/e 18) and Defendant's Motion (d/e 16) are DENIED.

## I.     BACKGROUND

The Court draws the following facts from the parties' statements of material fact in the Plaintiff's Partial Motion for Summary Judgment (d/e 18), Defendant's Response (d/e 29), Plaintiff's Reply (d/e 32), Defendant's Motion for Summary Judgment (d/e 16), Memorandum in Support (d/e 17), Plaintiff's Response (d/e 23), and Defendant's Reply (d/e 30). Any fact submitted by any party that was

not supported by a citation to evidence will not be considered by the Court. <u>See</u> Civ. LR 7.1(D)(2)(b)(2). Any response to an allegedly disputed fact unsupported by evidentiary documentation is deemed admitted. <u>Id.</u>

Plaintiff, Doug Hubbard, was employed by the Illinois State Board of Education ("ISBE") from 2017 to 2020. (d/e 17, 23). During his employment at ISBE, Plaintiff held the position of principal consultant on a technical assistance team, where he would provide troubleshooting installation or other fixes. *Id.* Plaintiff worked under a collective bargaining agreement in that position. (d/e 19, 29). Plaintiff's hours were 8:30 am to 5:00 pm, Monday through Friday. <u>Id.</u>

Chuck Murphy was Plaintiff's direct supervisor, and Mr. Murphy reported directly to Nancy Diefenback. (d/e 17, 23). Nancy Diefenback was employed by the ISBE as its director of the IT department and reported to ISBE's chief information officer, Melissa Oller. (d/e 17, 29). During the month of December 2019, Plaintiff was absent from work on ten occasions - December 2, 16, 17, 19, 20, 23, 24, 25, 26, 27. (d/e 17, 23).

On December 2, 2019 Plaintiff provided a note from Dr. Scott Morton, advising Plaintiff was ill on that date in support of this absence. (d/e 19, 29). For the absences on December 16, 17, 19, 20, 23, 24, 26, Plaintiff sent an email on each of these dates to the ITATTENDANCE email account advising he would be out of work that day. (d/e 19, 29, d/e 20, App. 401-410). These emails indicate that Plaintiff was sick, would not be in, or that he had "strep." Id. During the evening of December 26, 2019, Plaintiff emailed the ITATTENDANCE account advising he would not be in for work until December 30, 2019, and attached a return-to-work release signed by a medical professional, Brenda Hawkins.   (d/e 19, 29; d/e 21-3, App 411).

Diefenback drafted a Pre-Disciplinary Meeting Memorandum dated December 27, 2019, noting Plaintiff was previously disciplined on July 9, 2019 for failure to appropriately manage earned benefits time.   (d/e 17, 23). Specifically, this previous discipline involved Plaintiff utilizing sick time to attend a concert. This memorandum further noted a pattern of activity of sick time use issues, the dates Plaintiff was absent, and that a pre-disciplinary meeting had been scheduled on Friday, January 17, 2020. In addition, the

memorandum mentions that the time taken off in December 2019 was done on "dock" time, which meant Plaintiff had no available time on the books, no personal, vacation, or sick time. (d/e 17, 23).

On December 30, 2019, at 6:30 a.m., Plaintiff sent an email to the ITATTENDANCE account that he was ill and would be seeing a doctor. (d/e 19, 29). Approximately 90 minutes after this initial email, Plaintiff emailed Michael Sullivan, an ISBE human resource specialist, noting that Plaintiff's doctor had requested FMLA paperwork. (d/e 19, 29; d/e 20, App. 412, 427). One of Mr. Sullivan's responsibilities was to facilitate the paperwork for FMLA leaves of absence. (d/e 19, 29). Specifically, receiving FMLA documentation and ensuring that the proper paperwork was provided. (d/e 19, 29). However, he was not responsible for approving FMLA. (d/e 17, 23). On that same date Plaintiff requested FMLA paperwork, Mr. Sullivan responded to Plaintiff's email and sent the appropriate FMLA paperwork. (d/e 19, 29).

The FMLA paperwork provided to Plaintiff included a Certification of Health Care Provider for Employees Serious Health Condition. This certification requires various information from a health care professional including what condition an individual

suffers from, the duration, and asks a provider to be as specific as possible. (d/e 21-3, App. 414). Further this certification allows an employer to review and make a determination on possible FMLA coverage.

On January 2, 2020, at 6:08 a.m., Plaintiff emailed screenshots of the medical certification for FMLA to Chris Murphy, Michael Sullivan, and the "ITATTENDANCE" email. (d/e 17, 19, 23, 29). This certification was completed by Dr. Scott Morton. Within that FMLA paperwork sent, the estimated beginning and ending dates for the period of Plaintiff's incapacity listed "12/16-1/6/20." (d/e 17, 23, Ex. 7, Bates 000165). These emails were the sole notice Plaintiff provided to Chuck Murphy and the ITATTENDANCE email that he was going to be absent from work on January 2 and 3, 2020. (d/e 17, 23).

On January 2, 2020, at 9:20 a.m., Chuck Murphy emailed Plaintiff regarding an assigned task to be performed that day. Specifically, Murphy informed Plaintiff that Murphy had left a maintenance kit on Plaintiff's chair and that a printer needed to be installed. (d/e 17, 23). Various emails went between Nancy Diefenback, Melissa Oller, Miguel Calderon, and Edward Graham on that same date. Specifically, Ms. Diefenback noted that she found

Plaintiff's FMLA request "contradictory," that his medical condition may not have been "serious," and she asked that he be subjected to "re-certification specifying why such common ailments are incapacitating. (d/e 19, 29; d/e 21-3, App. 420). In another email, Ms. Diefenback noted Plaintiff did not call in or email that he would not be in the office although he sent in an FMLA form. Id at App. 420. After Miguel Calderon, the Human Resources Director of ISBE, reviewed Plaintiff's paperwork on the same date, Calderon responded via email advising Ms. Diefenback that his initial review suggested that Plaintiff met the threshold for FMLA. (d/e 19, 29).

On January 9, 2020, Ms. Diefenback sent a memo to Plaintiff advising that a pre-disciplinary hearing was scheduled for January 17, 2020. (d/e 19, 29). The memo specified that Plaintiff violated Article 12, Section 4 of the collective bargaining agreement, as he failed to notify his "immediate supervisor, Diefenback [me], or the department timekeeper that you would be absent from work on Thursday January 2, 2020, and again on Friday, January 3, 2020. (d/e 19, 29). Diefenback testified that she believed that Plaintiff was effectively a no-call/no-show for the dates of January 2 and 3, 2020. (d/e 19, 29).

On January 13, 2020, Plaintiff communicated with Michael Sullivan, who indicated Plaintiff might need a supplement from his physician. Id. A revised certification was prepared by Dr Scott Morton. On January 15, 2020, Mr. Sullivan emailed Plaintiff, notifying him that there were items missing in his FMLA paperwork. (d/e 17, 23). Specifically, some questions had incomplete responses or needed additional information from a medical professional. (d/e 17, Ex. 7).

On January 17, 2020, Plaintiff participated in a pre-disciplinary meeting, which was consolidated to discuss two different proposals for discipline: (1) a one-week suspension based on the Pre-Disciplinary Meeting Memorandum dated December 27, 2019, and (2) proposed termination based upon the Pre-Disciplinary Meeting Memorandum dated January 9, 2020. (d/e 19, 29; d/e 21-3, App. 240). Plaintiff provided various evidence during the meeting, including a letter from Dr. Morton, Plaintiff's previously submitted FMLA certification, and Plaintiff read a personal statement.

On February 3, 2020, ISBE informed Plaintiff that the FMLA certification form he submitted on January 16, 2020, had been reviewed, approved, and was effective "for intermittent use from

December 2, 2019, through December 15, 2019, continuous use from December 16, 2019, through January 15, 2020, and intermittent use again from January 16, 2020, when recertification for the 2020 fiscal year would need to be submitted. (d/e 17, 23).

On February 14, 2020, ISBE sent Plaintiff a memorandum, notifying him of his termination based upon Plaintiff's absences on January 2-3, 2020. (d/e 17, 23).

ISBE admits that Plaintiff was an eligible employee under the FMLA under 29 CFR 825.110 as of both December 1, 2019 and January 1, 2020. (d/e 19, 29). ISBE further admits that Plaintiff suffered from a serious health condition under the FMLA under 29 CFR 825.113 as of December 2, 2019, January 2, 2020, and January 15, 2020. Id.

## II.   LEGAL STANDARD

When moving for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the moving party bears the burden of showing, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) & (c); *Hummel v. St. Joseph Cty Bd. of Comm'rs*, 817 F.3d 1010, 1015–16 (7th Cir.

2016). "The moving party has the burden of either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." Id. But, even where there is no dispute as to the basic facts of a case, summary judgment will not be appropriate "if the parties disagree on the inferences which may reasonably be drawn from those undisputed facts." *Cent. Nat. Life Ins. Co. v. Fidelity & Deposit Co. of Md.,* 626 F.2d 537, 539–40 (7th Cir. 1980). The facts and all reasonable inferences derived therefrom are viewed in the light most favorable to the non-moving party. *Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008).

### III.   ANALYSIS

Plaintiff has not carried his burden showing an absence of material fact as to each element to show Defendant interfered with a right provided under the FMLA. Therefore, Plaintiff's Motion for Partial Summary Judgment (d/e 18) is DENIED. Defendant also has not carried its burden on summary judgment by showing an absence of a material fact as to whether Defendant interfered with Plaintiff's

FMLA rights. Therefore, Defendant's Motion for Summary Judgment (d/e 16) is DENIED.

The Family Medical Leave Act (FMLA) permits eligible employees to take up to twelve weeks of unpaid leave during any 12-month period of time for family or medical reasons. 29 U.S.C. § 2612. The FMLA prohibits an employer from interfering with, any right provided under the FMLA. 29 U.S.C. § 2615(a)(1). For a plaintiff to establish that his FMLA rights have been interfered with he must show: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. *Ryl-Kuchar v. Care Centers, Inc.,* 565 F. 3d 1027, 1030 (7th Cir. 2009).

The parties do not dispute that ISBE is an employer covered by the FMLA, so the Court will now turn its analysis to the notice requirement needed to substantiate a violation or interference. Although each of the parties briefly discuss the other elements required to substantiate an interference claim, much of the arguments are dominated by the FMLA's notice requirement.

Under, the FMLA, an employer may require employees "to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 U.S.C. § 825.302(d). Even for unforeseeable FMLA leave, there must be notice to the employer "as soon as practicable under the facts and circumstances of the particular case." *Id.* 825.303(a). Further, said notice must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R §§ 825.303(b).

Plaintiff argues that he provided more than sufficient notice to ISBE that he was seeking to take FMLA leave and ISBE did not provide the required FMLA responsive notice, barring a finding of summary judgment for the Defendants. Specifically, Plaintiff argues that ISBE must provide an eligibility notice pursuant to 29 C.F. R. § 825.300(b)(1) and a rights and responsibilities notice pursuant to 29 C.F.R. § 300(c)(1). ISBE contends that Plaintiff provided vague emails noting he was "sick," but he did not indicate a serious medical condition, which did not provide adequate notice of the possibility of FMLA leave and failed to comply with ISBE's internal polices, resulting in Plaintiff's termination.

Plaintiff was admittedly aware of certain procedural requirements regarding notification to ISBE when taking days off work. These requirements include the notification of his supervisor. Indeed, the parties agree that, under ISBE's policies, when an employee is going to be absent from work because of an illness, he is to notify either his immediate supervisor or the person designated to record attendance "within one (1) hour of the employee's scheduled starting time". This fact is further underscored as Plaintiff previously failed to use sick time appropriately in the past. Plaintiff not only was required to comply with the normal procedural requirements for notification when taking "sick time," but he was also required to "bring written confirmation documenting the appropriate use of all sick time" pursuant to the written reprimand he had received on May 16, 2019. (d/e 17, 23, Ex. 1).

### A. There Is a Genuine Issue of Material Fact Whether Plaintiff Provided Adequate Notice for His Absences in December 2019.

Plaintiff asserts that, for every instance he was absent, he contacted his supervisor and ITATTENDANCE email within the required time frame. Plaintiff's emails to his employer all note that Plaintiff was "feeling sick," or "sick," or possibly had "strep." (d/e 21,

Ex. 3, App. 401-413).  There was no notification as to a specific ongoing medical issue, other than a general reference to "strep" or a notification of one serious in nature.

Plaintiff did provide a sick note after his December 2, 2019 absence which did not list any specific medical issue and a return-to-work release on December 26, 2019. No other medical documentation or information for the other absences during the month of December was provided until Plaintiff requested FMLA paperwork on December 30, 2019. Specifically, Plaintiff emailed Michael Sullivan requesting the FMLA paperwork after informing ISBE he would not be in for work that day.

This FMLA paperwork was completed by Dr. Morton on December 31, 2019, and emailed to ISBE on January 2, 2020 at approximately 6 am. When Plaintiff did email his completed FMLA paperwork to ISBE the estimated dates listed "12/16-1/6/20." (d/e 17, 27). As all parties agree, Michael Sullivan was responsible for FMLA paperwork and was the person who would review the paperwork attached to Plaintiff's December 30, 2019 email.

Defendant argues *Collins v. NTN-Bower Corp*. supports Plaintiff's failure to provide proper notice. In *Collins*, the Seventh

Circuit affirmed summary judgment for an employer when an employee called and advised her employer that she was "sick," even though the employee was suffering from clinical depression. *Collins v. NTN-Bower Cop.,* 272 F.3d 1006, 1008 (7th Cir. 2001). The Seventh Circuit held that notice was inadequate because "sick" does not imply a "serious medical condition" as required by 29 U.S.C. § 2612(a)(1)(D). <u>Id.</u> Further, because the employer was not on notice that the FMLA might apply, the employer could terminate the employee's employment without inquiring into the seriousness of the condition. <u>Id. at 1008-09.</u>

Here, the language Plaintiff used in his emails regarding his absences throughout December 2019 is similar to that of the plaintiff in *Collins.* Using "sick" or "feeling sick" is too vague to provide an employer notice of the need for FMLA leave. Much like the plaintiff in *Collins,* here, Plaintiff had problems in the past managing benefit time and was required to submit medical support after being warned about that failure in the past. The written documentation from Dr. Morton advising Plaintiff was sick on December 2, 2019 and the return to work release on December 26, 2019 from a different physician were *required* based on Plaintiff's history of abusing sick

time. Further, neither of these notes provide notice of ongoing care of a specific nature or a serious condition that would place an employer on notice of possible FMLA leave.

Defendant further argues that Plaintiff failed to follow protocol, failing to submit doctor's notes for all of his absences in December 2019, which proves he failed in his notice requirement. Plaintiff failed to submit a doctor's note or medical documentation for each of his absences, but he did so submit for December 2, 26, and 27. Plaintiff did comply with the ISBE's requirements in December 2019 by alerting his supervisors within at least one hour that he would not be attending work. These notifications, although vague, did place his employer on notice of his absence but cannot be said to place the employer on notice of FMLA leave. Further, whether he was "sick" or suffering from "strep" is no indication of a serious medical issue that may indicate a need for FMLA leave.

Therefore, Plaintiff cannot meet his burden of interference at this stage, showing he provided sufficient notice of his intent to take FMLA leave prior to December 30, 2019, and is not entitled to summary judgment.

**B. There Is a Genuine Issue of Material Fact Whether Plaintiff Provided Adequate Notice for His Absences in January 2020.**

Defendant argues that although Plaintiff was eventually approved for the FMLA leave, Defendant was still entitled to terminate Plaintiff because: Defendant had already started disciplinary proceedings, Plaintiff failed to notify his supervisor he would be absent on January 2 and 3, 2020, and ISBE did not interfere with his FMLA rights. Plaintiff, in contrast, contends that ISBE was clearly provided adequate notice of his intention not only to take FMLA leave but that he would not be present for work on January 2 or 3, 2020.

On December 30, 2019, Plaintiff requested FMLA paperwork from Michael Sullivan. Plaintiff then met with his physician on the following day who completed the FMLA paperwork. Screenshots of this paperwork were returned via email to ISBE on January 2, 2020 and mailed. Included on this email were Michael Sullivan, Chuck Murphy, and the "ITATTENDANCE" email address. In the body of this email, Plaintiff does not note that he will not be at work the next two days or that he is sick and unable to. Instead, contained in the FMLA

paperwork on page 3, is the duration of the illness listed as December 16, 2019 through January 6, 2020.

Defendant ISBE supports its contention that Plaintiff failed to provide notice to his employer that he would not be at work on January 2-3, 2020, by noting Chuck Murphy was unaware that Plaintiff would not be in that day. Specifically, Mr. Murphy, who was Plaintiff's direct supervisor, sent Plaintiff an email Thursday morning that indicated he expected Plaintiff to be physically present in the office on January 2, 2020. While this may indicate Mr. Murphy had no notice that Plaintiff would not be at work, whether other individuals at ISBE did is less clear.

Ms. Diefenback, the Director of Information Technology, was not listed as a recipient of Plaintiff's January 2, 2020 email. However, at 9:11 am on that same date, Ms. Diefenback emailed Miguel Calderon, Edward Graham, and Melissa Oller regarding Plaintiff's paperwork, informing them Doug [the Plaintiff] had submitted FMLA paperwork. Of particular note, Ms. Diefenback seemingly refers to all the days that the Plaintiff missed, and includes "1/2" and mentions that he did not specifically call in or email that he would not be in the office on January 2, 2020.

Based on the record before the Court, Defendant is correct that Plaintiff did not specifically contact his direct supervisor or include a direct notification that he would be out of the office on January 2. Further, Plaintiff also did not directly email his supervisor regarding January 3, 2020, believing the submission of FMLA paperwork was enough. (d/e 17, 23). However, the emails from Ms. Diefenback support Plaintiff's contention that she at least was made aware of the January 2, 2020 absence and Plaintiff's January 2, 2020 email was not addressed to her directly.

Plaintiff's December 30, 2019 and January 2, 2020 emails did indeed put ISBE on notice of his intent to seek FMLA leave. Plaintiff's December 30, 2019 email, asking for FMLA paperwork, was clearly sufficient to show that he would be seeking leave and had already spoken to a treating physician about a medical leave. As to Plaintiff's January 2, 2020 email, which included screenshots of the completed FMLA paperwork and noted "this has been mailed back," was further confirmation that documentation had been prepared by a medical professional and the title of the email was "FMLA Paperwork."

An employee's obligation to give notice to an employer under a collective bargaining agreement is a "usual and customary"

requirement and employers are "entitled to the sort of notice that will inform them not only that the FMLA may apply but also when a given employee will return to work." *Gilliam v. United Parcel Service, Inc.,* 233 F.3d 969, 971 (7th Cir. 2000). This is the type of notice that Plaintiff attempted to provide to ISBE by emailing Michael Sullivan, Chuck Murphy, and the "ITATTENDANCE" email address, and was recognized by the Director of IT department, Nancy Diefenback when she was provided the FMLA paperwork and thereafter emailed various individuals regarding the January 2, 2020 absence. However, Ms. Diefenback was not Plaintiff's direct supervisor, email notice was not provided to her directly from Plaintiff but through somebody bringing the email to her attention, and, although the record is unclear, Diefenback does not appear to be the "timekeeper" referred to in the collective bargaining agreement.

However, Defendant's reliance on *Riley v. City of Kokomo* is somewhat misplaced based on the record the Court has received. In *Riley*, the court determined summary judgment was appropriate and there was no interference where the plaintiff requested FMLA leave on May 9, 2014, but the employer already decided to terminate her two days prior, on May 7, 2014. *Riley v. City of Kokomo*, 909 F.3d

182, 188 (7th Cir. 2018).  The record, including the sworn testimony from Ms. Diefenback, is silent as to whether there was a determination made prior to January 2-3, 2020 that Plaintiff would be fired for any additional unexcused absences. However, not until January 9, 2020 did Ms. Diefenback send a memo to Plaintiff regarding the "pre-disciplinary hearing" and specifically noted the absences on January 2 and January 3, 2020.

Although Plaintiff emailed his direct supervisor on January 2, 2020, Chuck Murphy had no notice regarding Plaintiff's planned absence on that day. Based on the Director of Information Technology's sworn testimony, Diefenback was made aware and memorialized that Plaintiff would be absent on January 2, 2020. Given this knowledge, this Court cannot determine how ISBE lacked notice of Plaintiff's intent to be absent from work on January 2, 2020. However, this Court has not been provided with enough information to determine that there is no issue of material fact as to what Plaintiff's direct supervisor knew, who or what the department timekeeper knew, or what determinations had been made about the Plaintiff regarding any prospective absences after the large number of absences during the month of December.

Finally, Plaintiff failed to comply with the usual and customary notice requirements as to January 3, 2020 as required under Article 12, Section 4 of the collective bargaining agreement regarding his absence on that date and the record as presented by both parties is unclear who knew what regarding said date. Although the FMLA paperwork noted the date Plaintiff would return, Plaintiff was still required to follow the usual and customary notice requirements prescribed by the collective bargaining agreement, just as he had for the full month of December on a day-to-day basis.

Plaintiff has failed to prove any absence of material fact regarding what knowledge or notice Plaintiff's supervisor had regarding his January 2-3, 2020 absences. Additionally, Defendant has failed to prove that a determination was made regarding Plaintiff's termination prior to his request for FMLA. Instead, disciplinary proceedings had commenced regarding Plaintiff's absences in December and a date set for a hearing, but a new letter for the January pre-disciplinary hearings was not sent until January 9, 2020. Although progressive discipline may be permissive pursuant to collective bargaining agreement at issue here, there is no direct and uncontested evidence that termination is what was planned. As

each of the parties failed to prove any absence of material fact, each of their motions is DENIED.

## IV.   CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment are each DENIED.

**IT IS SO ORDERED.**
**ENTERED: June 27, 2024.**
**FOR THE COURT**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**